IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

DOROTHY NAIRNE, DOCTOR; CLEE E. LOWE, REVEREND; ALICE
WASHINGTON, DOCTOR; BLACK VOTERS MATTER CAPACITY BUILDING
INSTITUTE; LOUISIANA STATE CONFERENCE OF THE NAACP; STEVEN
HARRIS, REVEREND,

Plaintiffs-Appellees

v.

NANCY LANDRY, in her official capacity as Secretary of State of Louisiana,

Defendant-Appellant

(*See inside cover for continuation of caption*)

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

———————————

OPPOSITION OF THE UNITED STATES TO APPELLANTS' PETITION FOR
INITIAL HEARING EN BANC

———————————

KRISTEN CLARKE
  Assistant Attorney General

ERIN H. FLYNN
NOAH B. BOKAT-LINDELL
  Attorneys
  U.S. Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 598-0243

*(Continuation of caption)*

STATE OF LOUISIANA, by and through ATTORNEY GENERAL ELIZABETH B. MURRILL; PHILLIP DEVILLIER, in his official capacity as Speaker of the Louisiana House of Representatives; CAMERON HENRY, in his official capacity as President of the Louisiana Senate,

Intervenors-Appellants

v.

UNITED STATES OF AMERICA,

Intervenor-Appellee

# TABLE OF CONTENTS

**PAGE**

STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................... 4

CONCLUSION ............................................................................................ 11

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES:** PAGE

*Allen v. Milligan*, 599 U.S. 1 (2023)......................................................3, 6

*Allen v. State Bd. of Elections*, 393 U.S. 544 (1969)................................5

*Arkansas State Conf. NAACP v. Arkansas Bd. of Apportionment*,
    86 F.4th 1204 (8th Cir. 2023), *reh'g en banc denied*,
    91 F.4th 967 (8th Cir. 2024) ........................................................ 7-9

*Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021)............................ 2-4

*City of Mobile v. Bolden*, 446 U.S. 55 (1980) ...................................... 1-2

*Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009) ................................6

*Gruver v. Louisiana Bd. of Supervisors for La. State Univ. Agric. &*
    *Mech. Coll.*, 959 F.3d 178 (5th Cir. 2020) ....................................10

*Morse v. Republican Party of Va.*, 517 U.S. 186 (1996)...................................... 5-6

*OCA-Greater Hous. v. Texas*, 867 F.3d 604 (5th Cir. 2017)............................7

*Robinson v. Ardoin*, 86 F.4th 574 (5th Cir. 2023) ................................ 3, 7-8

*Shelby Cnty. v. Holder*, 570 U.S. 529 (2013) ......................................1, 3

*Thornburg v. Gingles*, 478 U.S. 30 (1986) ...............................................2

*United States v. Texas Tech Univ.*, 171 F.3d 279 (5th Cir. 1999) ............................4

*Williams v. Catoe*, 946 F.3d 278 (5th Cir. 2020) (en banc)....................................10

**STATUTES:**

Voting Rights Act of 1965
    52 U.S.C. 10301.......................................................................3
    52 U.S.C. 10301(a) ................................................................2

**STATUTES (continued):**                                    **PAGE**

    52 U.S.C. 10301(b) .................................................2

    52 U.S.C. 10302 ....................................................7

    Pub. L. No. 89-110, § 2, 79 Stat. 437 (1965) ........1

    Pub. L. No. 91-285, 84 Stat. 314 (1970) ...............6

    Pub. L. No. 94-73, 89 Stat. 400 (1975) .................6

    Pub. L. No. 97-205, 96 Stat. 131 (1982) ...............6

    Pub. L. No. 109-246, 120 Stat. 577 (2006) ...........6

42 U.S.C. 1983 ...........................................................8

**LEGISLATIVE HISTORY:**

S. Rep. No. 417, 97th Cong., 2d Sess. (1982) ...................2, 5

**RULES:**

Fed. R. App. P. 35(a) ...............................................5, 10

Fed. R. App. P. 35(a)(2) ..............................................7

Fed. R. App. P. 35(b) ..................................................5

Fed. R. App. P. 35(b)(1) .............................................10

Fed. R. App. P. 35(b)(1)(A) ..........................................7

5th Cir. R. 35.1 ...................................................... 1, 5

5th Cir. R. 35.3 ......................................................... 1

5th Cir. I.O.P. 35 ....................................................... 5

The United States respectfully submits this opposition to appellants' Petition for Initial Hearing En Banc for this Court to revisit whether Section 2 of the Voting Rights Act (VRA) is privately enforceable. Because the petition fails to meet the stringent standards of Federal Rule of Appellate Procedure 35(a) and Fifth Circuit Rule 35.1, the petition should be denied.[1]

## STATEMENT

1. Section 2 of the VRA imposes a "permanent, nationwide ban on racial discrimination in voting." *Shelby Cnty. v. Holder*, 570 U.S. 529, 557 (2013). The statute as originally enacted in 1965 prohibited voting practices or procedures that "deny or abridge the right of any citizen of the United States to vote on account of race or color." Pub. L. No. 89-110, § 2, 79 Stat. 437 (1965). In *City of Mobile v. Bolden*, 446 U.S. 55 (1980), a case brought by private parties, a plurality of the Supreme Court held that Section 2 "simply restated the prohibitions already contained in the Fifteenth Amendment" and therefore reached only "purposefully discriminatory" government actions. *Id.* at 61, 65. The Court assumed that private

---

[1] Appellants styled their submission as a Petition for Initial Hearing En Banc (previously ECF No. 125) and filed it under Federal Rule of Appellate Procedure 35(a)(2). Pet. i, iii. Under Circuit Court Rule 35.3, "[n]o response to a petition for en banc consideration will be received unless requested by the court." On April 24, 2024, however, this Court designated appellants' filing as a "motion" (currently ECF No. 125-1). The United States contacted the Clerk's Office the same day, which confirmed that the usual procedures and ten-day response deadline for motions applied. Accordingly, the United States now files this response to appellants' petition.

plaintiffs could sue to enforce Section 2, *id.* at 60 & n.8, just as private plaintiffs can enforce the Fifteenth Amendment.

Congress amended Section 2 in 1982 to "repudiate" *Bolden*'s interpretation that the statute reached only intentional discrimination. *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2332 (2021). As amended, Section 2 prohibits States from imposing or applying voting practices or procedures "in a manner which *results in* a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C. 10301(a) (emphasis added). A "results" violation is established "if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in [a] State or political subdivision are not equally open to participation by members of a class of citizens protected by" Section 2, "in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C. 10301(b).

In the Senate Report accompanying the 1982 amendments, which the Supreme Court has recognized as the "authoritative source for legislative intent" behind Section 2, *Thornburg v. Gingles*, 478 U.S. 30, 43 n.7 (1986), Congress "reiterate[d] the existence of the private right of action under section 2," S. Rep. No. 417, 97th Cong., 2d Sess. 30 (1982) (1982 Senate Report). For more than 40 years, "[b]oth the Federal Government and individuals have sued to enforce § 2"

and its results test. *Shelby Cnty.*, 570 U.S. at 537. And the Supreme Court has "heard a steady stream of § 2 vote-dilution cases" brought mainly by private plaintiffs. *Brnovich*, 141 S. Ct. at 2333 & n.5 (listing cases).

2. Several Black voters and nonprofit groups (collectively, private plaintiffs) sued the Louisiana Secretary of State under Section 2 of the VRA, 52 U.S.C. 10301, alleging that Louisiana's 2022 state legislative maps impermissibly diluted the votes of Black Louisianans. Doc. 14.[2] The district court allowed the Speaker of the Louisiana House, the President of the Louisiana Senate, and the State of Louisiana to intervene as defendants. Doc. 42. The court later stayed proceedings pending the Supreme Court's decision in *Allen v. Milligan*, 599 U.S. 1 (2023). Doc. 79.

After the Supreme Court issued its decision in *Milligan*, the district court lifted the stay and proceeded toward trial. Doc. 95. Because some of defendants' pretrial arguments called into question Section 2's constitutionality, appellants provided requisite notice to the Attorney General to allow for the United States' intervention in the case. Doc. 178. The United States intervened in the litigation to defend Section 2's constitutionality (Doc. 199); the United States also noted in its briefing that *Robinson v. Ardoin*, 86 F.4th 574 (5th Cir. 2023), controlled as to

---

[2] "Doc. __" refers to documents filed in the district court, *Nairne v. Ardoin*, No. 3:22-cv-178 (M.D. La.). "Pet. __" refers to appellants' Petition for Initial Hearing En Banc, filed in this Court.

the State's argument concerning private plaintiffs' ability to sue under the statute (Doc. 205, at 3 n.2).

After a seven-day bench trial, the district court ruled that private plaintiffs had proven that the Louisiana State House and Senate maps violate Section 2. Doc. 233, at 1.  As part of its ruling, the court rejected appellants' motion to dismiss the case based on their assertion that private plaintiffs may not enforce Section 2.  *Id.* at 14-18.  The court recognized that it was "bound" by this Court's decision in *Robinson*, which "already concluded that Section 2 provides a right of action to private plaintiffs."  Doc. 233, at 17.[3]

Appellants appealed the district court's judgment to this Court.  Docs. 241, 242, 255.  On April 23, 2024, appellants moved for initial hearing en banc on the question whether Section 2 contains an implied private right of action.

## ARGUMENT

En banc hearing "is not favored and ordinarily will not be ordered unless:" (1) the decision at issue conflicts with a decision of the Supreme Court or this

---

[3]  Appellants moved to dismiss under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Doc. 233, at 14-18.  However, "[a] determination that the relevant statute creates no cause of action under which the plaintiff may proceed says nothing about a court's subject-matter jurisdiction over the suit."  *United States v. Texas Tech Univ.*, 171 F.3d 279, 288 (5th Cir. 1999); *see Brnovich*, 141 S. Ct. at 2350 (Gorsuch, J., concurring) (stating that Court need not address whether Section 2 creates private right of action for this reason).  Whether private parties may enforce Section 2 is thus a merits question properly analyzed under Rule 12(b)(6), *not* a jurisdictional question subject to a Rule 12(b)(1) motion.

Court, and en banc consideration "is therefore necessary to secure and maintain uniformity of the court's decisions"; or (2) "the proceeding involves a question of exceptional importance," such as "an issue on which the panel decision conflicts with the authoritative decisions of other" circuit courts. Fed. R. App. P. 35(a) and (b); *see* 5th Cir. R. 35.1 & I.O.P. 35. Neither circumstance exists here.

1. Appellants do not assert that the district court's right-of-action holding violates any decision of the Supreme Court or this Court, or that en banc consideration is "necessary to secure or maintain uniformity of th[is] [C]ourt's decisions." Fed. R. App. P. 35(a). Nor could they. To the contrary, both the Supreme Court and this Court have stated that Section 2 creates a private right of action, and no decision of this Court has concluded otherwise.

In *Morse v. Republican Party of Virginia*, 517 U.S. 186, 233 (1996), five Justices recognized that although Section 2 "provides no right to sue on its face, 'the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965.'" *Id.* at 232 (opinion of Stevens, J., joined by Ginsburg, J.) (omission in original) (quoting 1982 Senate Report 30); *accord id.* at 240 (opinion of Breyer, J., concurring in the judgment, joined by O'Connor & Souter, JJ.). Decades earlier, the Court had found a private right of action to enforce Section 5 of the VRA. *See Allen v. State Bd. of Elections*, 393 U.S. 544, 556-557 (1969). The Court in *Morse* recognized that Congress had likewise

intended to create a private right of action to enforce the prohibition on poll taxes in Section 10 of the VRA. *See* 517 U.S. at 232-234 (opinion of Stevens, J.). And it did so largely because it would be anomalous for Congress not to have intended such a right of action for Section 10 when Congress had authorized one to enforce both Section 5 *and* Section 2. *Id.* at 232; *id.* at 240 (Breyer, J., concurring).

Congress has ratified the Court's understanding, including the Court's holding in *Morse*, that Section 2 is privately enforceable. "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239-240 (2009) (citation omitted). In repeatedly amending the VRA, Congress has never questioned the uniform view that Section 2 is privately enforceable—including when Congress amended the VRA in 2006 after the Court's decision in *Morse*. Pub. L. No. 91-285, 84 Stat. 314 (1970); Pub. L. No. 94-73, 89 Stat. 400 (1975); Pub. L. No. 97-205, 96 Stat. 131 (1982); Pub. L. No. 109-246, 120 Stat. 577 (2006). As the Supreme Court has said about other statutory interpretation questions, the fact that "Congress has never disturbed [the Court's] understanding of § 2" when "Congress is undoubtedly aware of" the Court's consistent allowance of private enforcement actions greatly strengthens the force of the Court's ruling in *Morse*. *Allen v. Milligan*, 599 U.S. 1, 19, 39 (2023).

As appellants acknowledge (Pet. iii-iv), this Court, too, has held that private plaintiffs may enforce Section 2, *see Robinson v. Ardoin*, 86 F.4th 574, 588 (5th Cir. 2023). *Robinson* "consider[ed] most of the work on this issue to have been done by [this Court's] *OCA-Greater Houston* holding that the Voting Rights Act abrogated the state sovereign immunity anchored in the Eleventh Amendment." *Ibid.* (referencing *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017)). However, the panel also noted that "proceedings to enforce voting guarantees in any state or political subdivision can be brought by the Attorney General or by an 'aggrieved person'" under Section 3 of the VRA, and that private plaintiffs are "aggrieved persons" who can bring such suits. *Ibid.* (quoting 52 U.S.C. 10302). Appellants admit that "*Robinson* 'bound' the district court." Pet. 4 (citation omitted). And they point to no other decision of this Court with which *Robinson* "conflicts." Fed. R. App. P. 35(b)(1)(A); *see also* Pet. 4 (admitting that "a panel of this Court . . . would be duty bound to follow *Robinson*" under "the rule of orderliness," indicating that there is no prior inconsistent decision of this Court).

2. Nor is the question presented here one of "exceptional importance," Fed. R. App. P. 35(a)(2), meriting initial hearing en banc. Appellants invoke *Arkansas State Conference NAACP v. Arkansas Board of Apportionment*, 86 F.4th 1204 (8th Cir. 2023) (*Arkansas NAACP*), *reh'g en banc denied*, 91 F.4th 967 (8th Cir. 2024)

(*Arkansas NAACP II*), as a basis for en banc consideration. Yet this Court already denied that same request in *Robinson*, after the Eighth Circuit had issued *Arkansas NAACP*. *See* Order on Pet. for Reh'g En Banc at 2, *Robinson*, *supra* (No. 22-30333). Appellants speculate that "procedural complications" might have "counsel[ed] against en banc review in *Robinson*." Pet. 6-7. Nothing in the order denying en banc review supports that contention, and no "member of the panel or judge in regular active service requested that the court be polled on rehearing en banc." Order on Pet. for Reh'g En Banc at 2, *Robinson*, *supra* (No. 22-30333).

Moreover, it is far from clear that the circuit split appellants posit will have any practical consequences on private plaintiffs' ability to enforce Section 2. The Eighth Circuit's decision in *Arkansas NAACP* expressly declined to decide whether private plaintiffs can enforce Section 2 via the general cause of action provided by 42 U.S.C. 1983. *See Arkansas NAACP*, 86 F.4th at 1218; *Arkansas NAACP II*, 91 F.4th at 968 (Stras, J., concurring in denial of reh'g en banc) ("It may well turn out that private plaintiffs can sue to enforce § 2 of the Voting Rights Act under § 1983."). The Eighth Circuit is currently considering that question in *Turtle Mountain Band of Chippewa Indians v. Howe*, No. 23-3655 (8th Cir. docketed Dec. 6, 2023). Should the Eighth Circuit uphold the district court's determination in *Turtle Mountain* that private plaintiffs *can* enforce Section 2 via

Section 1983, no practically meaningful circuit split will remain on the right-of-action issue.

Furthermore, as appellants acknowledge in their en banc petition (at 9 n.3), private plaintiffs invoked Section 1983 in their complaint and argued below that they could "enforce Section 2 through Section 1983." Appellants' merits arguments about Section 1983 relief notwithstanding (*ibid.*), an affirmance in *Turtle Mountain* would avoid any split between this Court and the Eighth Circuit for private plaintiffs like those here who sue under Section 1983.

Because appellants cannot satisfy either criterion for en banc hearing, the United States does not address the merits of their arguments here. Suffice it to say that appellants' position is incorrect for all the reasons the United States has elsewhere explained. *See, e.g.*, U.S. Br. at 39-55, *Alpha Phi Alpha Fraternity Inc. v. Secretary, State of Ga.*, No. 23-13914 (11th Cir. Apr. 8, 2024), https://perma.cc/3M3N-44P3; U.S. Br. at 7-28, *Turtle Mountain*, No. 23-3655 (8th Cir. Mar. 25, 2024), https://perma.cc/W7A8-S7RA; U.S. Br. at 6-28, *Arkansas NAACP*, *supra* (No. 22-1395), https://perma.cc/F47B-92KN. There would be no basis on which to conclude here that private plaintiffs could not sue the Secretary.

3. Appellants' principal argument for initial en banc hearing is based not in law, but rather in "efficiency and judicial economy." Pet. 3. But such concerns are not traditional bases for initial en banc review. *See* Fed. R. App. P. 35(a)-(b)(1).

For good reason:  Such arguments could be made in *any* appeal as to *any* issue on which there is existing panel precedent.  *See, e.g.*, *Gruver v. Louisiana Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*, 959 F.3d 178, 181 (5th Cir. 2020) (noting that appellant had "sought initial hearing en banc because, under the rule of orderliness, only our full court can 'overturn another panel's decision,'" but that the "request had no takers" (citation omitted)).[4]

---

[4]  *Williams v. Catoe*, 946 F.3d 278 (5th Cir. 2020) (en banc), to which appellants point, is a rare exception.  There, the Court granted initial hearing en banc in an interlocutory appeal to address a "jurisdictional" question—the "issue of immediate appealability" of the denial of counsel to a Section 1983 plaintiff.  *Id.* at 279 & n.1.

**CONCLUSION**

For the foregoing reasons, this Court should deny the Petition for Initial

Hearing En Banc.

Respectfully submitted,

KRISTEN CLARKE
  Assistant Attorney General

s/ Noah B. Bokat-Lindell
ERIN H. FLYNN
NOAH B. BOKAT-LINDELL
  Attorneys
  U.S. Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 598-0243

**CERTIFICATE OF COMPLIANCE**

This response complies with the type-volume limits of Federal Rules of Appellate Procedure 27(d)(2) and 35(b)(2)(A) because it contains 2455 words. This response also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it was prepared in Times New Roman 14-point font using Microsoft Word for Microsoft 365.

s/ Noah B. Bokat-Lindell
NOAH B. BOKAT-LINDELL
Attorney

Date: May 3, 2024