**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

DOROTHY NAIRNE, *et al.*

*versus*

R. KYLE ARDOIN, in his capacity
as Secretary of State of Louisiana

CIVIL ACTION

22-178-SDD-SDJ

## RULING AND ORDER

This matter comes before the Court on the following motions filed by the Black Voters Matter Capacity Building Institute, Steven Harris, Louisiana State Conference of the NAACP, Clee E. Lowe, Dorothy Nairne, and Alice Washington (collectively, the "Plaintiffs"): (1) a *Motion to Set Schedule for Remedial Proceedings*; (2) a *Motion for Scheduling Conference*; (3) a *Motion for Special Election and Expedited Briefing Schedule*; and (4) a *Renewed Motion for Scheduling Conference*.[1] Defendant, Nancy Landry, in her official capacity as Secretary of the State of Louisiana, and Intervenor-Defendant, the State of Louisiana (the "State"), (collectively, the "Defendants"), jointly filed *Oppositions* to these motions.[2] Plaintiffs submitted a *Reply*.[3] The Legislative-Intervenors, Phillip DeVillier, in his official capacity as Speaker of the Louisiana House of Representatives, and Cameron Henry, in his official capacity as President of the Louisiana Senate, filed an *Opposition* to Plaintiffs' Renewed Motion for a Scheduling Conference, and adopted and joined the arguments made by the Defendants in their

---

[1] Rec. Docs. 235, 236, 237, and 254.
[2] Rec. Docs. 244 and 265.
[3] Rec. Doc. 271.

*Oppositions* therein.[4] For the following reasons, the Motions will be denied in part and deferred in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, a group of Black Louisianans and Louisiana nonprofit organizations, filed this suit seeking a preliminary injunction on March 14, 2022, alleging that the 2022 redistricting plans, enacted through S.B. 1 and H.B. 14, for the Louisiana House of Representatives and State Senate unlawfully diluted their votes in violation of § 2 of the Voting Rights Act of 1965 ("VRA"), 52 U.S.C. § 10301.[5] The Court converted the matter to a trial on the merits on June 21, 2023.[6] A bench trial commenced on November 27, 2023 and concluded on December 5th. On February 8, 2024, the Court issued its Ruling and Order, finding that the State House and Senate maps enacted by the Louisiana Legislature violated § 2 of the VRA.[7] The Court ordered that elections under S.B. 1 and H.B. 14 be enjoined. The Court permitted the State to have a reasonable period of time to address the Court's findings and implement State House and Senate elections maps that comply with § 2 of the VRA.[8]

On February 12th, Plaintiffs filed motions to set their proposed schedule for remedial proceedings and to set a scheduling conference.[9] The next day, Plaintiffs filed a motion seeking that the Court order a special election and an expedited briefing schedule.[10] The Court set a scheduling conference on February 21st and ordered the

---

[4] Rec. Doc. 266. "Legislative Intervenors adopt and join in the arguments raised in Defendants' February 20, 2024, Joint Memorandum in Opposition to Plaintiffs' Motions for Special Election and Scheduling Order." Rec. Doc. 266, p. 1, footnote 1.
[5] Rec. Doc. 14.
[6] Rec. Doc. 93.
[7] Rec. Doc. 233.
[8] *Id.*
[9] Rec. Docs. 235 and 236.
[10] Rec. Doc. 237.

Defendants and Intervenors to file responses to Plaintiffs' motions by February 20th.[11] On February 19th, Defendants filed a notice of appeal from the Court's February 8th Ruling and Order to the Fifth Circuit.[12] Thereafter, Defendants jointly filed their oppositions to Plaintiffs' motions and argued that the notice of appeal stripped the Court of its jurisdiction to review these motions.[13] The following day, the Court canceled the scheduling conference.[14] On March 5th, the Plaintiffs renewed their motion for a scheduling conference arguing the appeal did not strip the Court of its jurisdiction to carry out the remedial phase of this matter while the merits of the case were on appeal.[15] On March 13th, the Defendants and Legislative-Intervenors filed oppositions to this renewed motion.[16] On April 10th, Plaintiffs submitted a reply to their Motion for Special Election and Expedited Briefing Schedule.[17] Now, the Court considers whether it retains jurisdiction to consider these motions, and if so, whether the motions should be granted.

## II.    LAW AND ANALYSIS

Plaintiffs request that this Court set a schedule for remedial proceedings and move the Court to order  the State of Louisiana to hold a special election for the Louisiana State Legislature.[18] The Plaintiffs seek an expedited briefing schedule on their motion to ensure there is sufficient time to adopt a new map and conduct a special election simultaneously with the November 2024 presidential and congressional elections.[19]

---

[11] Rec. Doc. 238.
[12] Rec. Docs. 241 and 242.
[13] Rec. Doc. 244, pp. 4–6.
[14] Rec. Doc. 248.
[15] Rec. Doc. 254-1, pp. 2–3.
[16] Rec. Docs. 265 and 266.
[17] Rec. Doc. 271. Pursuant to Local Rule 7(F), Plaintiffs sought leave to file a reply in support of their Motion for Special Election and Expedited Briefing Schedule. The Court granted the Plaintiffs' motion for leave on April 9, 2024. Rec. Docs. 249 and 270.
[18] Rec. Doc. 235.
[19] Rec. Doc. 237.

Defendants argue that these motions should be denied because (1) this Court no longer retains jurisdiction due to the Defendants' notice of appeal and (2) a special election is unwarranted under the circumstances.[20]

### a. The Court's Jurisdiction

"A notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."[21] Nevertheless, a district court is not stripped of all jurisdiction once a notice of appeal is filed. "The district court maintains jurisdiction as to matters not involved in the appeal, such as the merits of an action when appeal from a preliminary injunction is taken, or in aid of the appeal as by making clerical corrections."[22] The district court has the authority to "preserve the status quo" while the case is pending appeal.[23]

Defendants argue that this Court should deny Plaintiffs' motions for remedial proceedings and a special election in part because the Court does not possess jurisdiction to order a special election.[24] Plaintiffs counter that the Court retains jurisdiction over Plaintiffs' requests because the Defendants seek appeal of the *merits* of the Court's order, not the *remedial proceedings*.[25] They assert that the Court's consideration of holding remedial proceedings and a special election "will do nothing to disrupt or alter the

---

[20] Rec. Doc. 244, pp. 4–14.
[21] *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982) (internal citations omitted).
[22] *Farmhand, Inc. v. Anel Eng'g Indus., Inc.,* 693 F.2d 1140, 1145 (5th Cir.1982) (citing 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure § 3949, at 359 (1977)).
[23] *See Coastal Corp. v. Texas E. Corp.,* 869 F.2d 817, 820 (5th Cir. 1989) (explaining that the district court may issue orders that are designed to preserve the status quo) (citing *Ideal Toy Corp. v. Sayco Doll Corp.,* 302 F.2d 623 (2d Cir. 1962)).
[24] Rec. Doc. 244, pp. 4–6.
[25] Rec. Doc. 254-1, pp. 2–3; Rec. Doc. 271, pp. 1–3.

Court's merits ruling or the order enjoining use of Louisiana's [enacted] House and Senate maps in any way."[26]

In its February 8th Ruling and Order, the Court found that S.B. 1 and H.B. 14 violated the VRA and ordered the following: [E]lections under S.B. 1 and H.B. 14 be and are hereby ENJOINED. The State is hereby permitted a reasonable period of time, to be determined by the Court following submittals by the parties, to address the Court's findings and implement State House and Senate election maps that comply with § 2 of the Voting Rights Act."[27]

The Court finds that pursuant to its Order, the Court retains jurisdiction in that it may, and will if necessary, enforce its Order which prohibits the State from using H.B. 14 and S.B. 1 in the next state legislative election, which is set for October 2027.[28] Moreover, pursuant to its Order, this Court has required and will continue to require that the State remain active in creating new House and Senate elections maps, even amidst the appeal. The Defendants are obligated to carry out this Court's Order, unless it is overturned by the Fifth Circuit. But, the Court cannot find that it is within its jurisdiction to order a special election because doing so would be inappropriately enlarging the scope of its Order, thus going beyond merely maintaining the status quo.

In their Renewed Motion for a Scheduling Conference, Plaintiffs direct the Court to several cases concerning a district court's jurisdiction when an appeal is pending.[29] The Court finds that these cases are distinguishable or stand for the proposition the Court sets forth above.

---

[26] Rec. Doc. 271, p. 2.
[27] Rec. Doc. 233, p. 91.
[28] Rec. Doc. 266, p. 19.
[29] Rec. Doc. 254-1, p. 3.

For example, in *Plaquemines Par. Comm'n Council v. U.S., by Mitchell*, the Fifth Circuit held that a district court retained jurisdiction to enforce an order even though the decision was on appeal.[30] In June 1967, a district court ordered that schools be desegregated in the Plaquemines Parish public school system and required the parish school board to carry out acts such as implementing remedial programs and taking additional financial steps to finance the school system.[31] The school board appealed the June 1967 order.[32] By March 1968, the school board experienced a "grave financial situation" because of its compliance with the court's June 1967 order and the board announced that the public school system would have to close that April.[33] But, the district court restricted the school board from closing the public school system and further restrained the school board from failing to provide adequate revenue for operations to continue through the school year. The school board appealed this order, arguing that the district court lost jurisdiction to grant further relief because the June 1967 order was still on appeal.[34] The Fifth Circuit disagreed with the school board and found that the district court had authority to "maintain the status quo and to insure the enforcement of its previous orders."[35] The Fifth Circuit found that this notion was "particularly true with respect to desegregation cases,"[36] and without the district court enforcing its order there was a "very real threat" to public education in Plaquemines Parish.[37]

---

[30] *Plaquemines Par. Comm'n Council v. U.S., by Mitchell*, 416 F.2d 952 (5th Cir. 1969).
[31] *U. S. by Clark v. Plaquemines Par. Sch. Bd.*, 291 F. Supp. 841, 854–55 (E.D. La. 1967), *modified sub nom. Plaquemines Par. Sch. Bd. v. United States*, 415 F.2d 817 (5th Cir. 1969).
[32] *Plaquemines Par. Sch. Bd.*, 415 F.2d 817.
[33] *Plaquemines Par. Comm'n Council*, 416 F.2d at 953.
[34] *Id* at 954.
[35] *Id*.
[36] *Id*.
[37] *Id*.

The Fifth Circuit highlighting how the district court in *Plaquemines Parish Comm'n Council*, "was faced with a drastic change of circumstances, including a very real threat to the continued existence of public education" in the parish, suggests that the urgent and extreme circumstances influenced the Circuit's reasoning.[38] The school system was set to close in a matter of weeks unless the district court issued its March 1986 order.[39] Here, the next state legislative election is not until October 2027. Accordingly, the level of urgency in *Plaquemines Parish* is not analogous to the situation that exists here.

Moreover, the district court's June 1967 order in *Plaquemines Parish School Board*, specifically stated "[t]he [c]ourt may require the School Board to take steps to finance the operation of the school system in accordance with minimum legal requirements" and stated:

> Where there is a conscious effort on the part of the School Board and governing body to debilitate or lower the standard of education of a public school system to interfere with the orderly desegregation of that school system, the [c]ourt may grant appropriate relief including relief, which is based on past experience and practice, to ensure that such system will operate in accordance with minimum legal requirements.[40]

The district court's March 1968 order served to "insure the enforcement of its previous order" requiring the school board to desegregate and maintain operations of the school system.  Here, the Court's Order did not provide for circumstances under which it would order a special election. The Court ordered that within a reasonable amount of time, Defendants must create VRA-compliant maps and enjoined Defendants from conducting elections under H.B. 14 or S.B. 1. Accordingly, this case is persuasive in that

---

[38] *Id.*

[39] *See id* at 953 (the superintendent of the public school system announced on March 5, 1968 that the school system would close on April 1, 1968).

[40] *Plaquemines Par. Sch. Bd.*, 291 F. Supp. at 855.

this Court may set a scheduling conference to enforce its Order and ensure the parties remain active in implementing new maps during the appeal process. But, this case does not persuade the Court that ordering a special election is within the scope of its current authority.

Plaintiffs' reliance on *Farmhand, Inc. v. Anel Eng'g Indus., Inc.* fails for the same reasons. In that case, a dispute arose over a patent and the case went to a jury trial. The jury found in favor of the plaintiffs finding that the plaintiffs held a valid patent. Accordingly, the district court enjoined the defendant from using, selling, or making any products within the scope of the patent. The defendant appealed the decision.[41] Following the notice of appeal, the plaintiffs charged the defendant with violating the district court's injunction and moved the district court to find the defendant guilty of contempt.[42] But, the district court denied the motion of contempt. The Fifth Circuit found that the district court maintained jurisdiction to supervise its injunctive order, thus the district court properly entertained the motion of contempt.[43] Again, this stands for the proposition that this Court maintains jurisdiction to enforce its injunctive order. But, this case does not persuade the Court that it maintains jurisdiction to order the State to conduct a special election.

Finally, the parties rely on the procedural posture and legal conclusions set forth in the related case, *Robinson v. Ardoin,* in which many of the same plaintiffs challenged the congressional election maps under the VRA.[44] Plaintiffs provide *Robinson* as "an example of how the district court retains jurisdiction to continue progressing through

---

[41] *Farmhand, Inc. v. Anel Eng'g Indus., Inc.*, <u>693 F.2d 1140, 1141</u> (5th Cir.1982).
[42] *Id.*
[43] *Id* at 1146.
[44] *See Robinson v. Ardoin*, <u>37 F.4th 208</u> (5th Cir. 2022) (denying motions for stay pending appeal) and *Robinson v. Ardoin*, <u>2022 WL 2092551</u> (M.D. La. June 9, 2022) (denying joint motions to stay pending appeal).

remedial proceedings while a merits appeal unfolds, so long as the case is not stayed."[45] They argue because there is no stay in place, the remedial proceedings may go forth.[46] In *Robinson*, the Court found the Plaintiffs showed a substantial likelihood of succeeding on the merits of their VRA claims and entered a preliminary injunction.[47] Thereafter, the Defendants appealed. The Court planned to proceed to the remedial phase of the preliminary injunction while the merits of the injunction were pending before the Fifth Circuit.[48] But, as Defendants point out, in *In re Landry*, the Fifth Circuit, wary of what it called "rush[ed] redistricting," vacated the Court's remedial hearing order.[49] The Fifth Circuit expressed concern that a remedy order and the merits of the preliminary injunction would create two separate appellate tracks.[50] The Court is reticent to order a special election, a ruling which would undoubtedly result in an appeal because doing so would create a two-track appeal process—a trajectory the Fifth Circuit strongly cautioned against.[51]

Considering the above, the Court finds that it lacks jurisdiction to issue an order for a special election at this time.[52] Accordingly, the Motion to Set Schedule for Remedial Proceedings is denied.

---

[45] Rec. Doc. 271, p. 2.
[46] *Id* at pp. 2–3.
[47] *Robinson v. Ardoin*, 605 F. Supp. 3d 759 (M.D. La.), *cert. granted before judgment*, 142 S. Ct. 2892, 213 L. Ed. 2d 1107 (2022), *and cert. dismissed as improvidently granted*, 143 S. Ct. 2654, 216 L. Ed. 2d 1233 (2023), *and vacated and remanded*, 86 F.4th 574 (5th Cir. 2023).
[48] *See In re Landry*, 83 F.4th 300, 303 (5th Cir. 2023) (the Louisiana Attorney General seeking to vacate this Court's remedial hearing in *Robinson* that was scheduled to begin on October 3, 2023).
[49] *Id* at 304, 308.
[50] *Id* at 305.
[51] *Id* at 304–305.
[52] Defendants seek alternatively to the Court finding that it lacks jurisdiction, that this Court stay its Order pending appeal. This request is now moot. But, if it were to consider the merits of Defendants' request, the Court finds that the Defendants have not shown that they can satisfy the factors that warrant a stay. Defendants merely recite the factors justifying a stay and argue the Court's Order "is not likely to withstand appellate scrutiny." Rec. Doc. 244, p. 14. Such a conclusory statement is insufficient to warrant a stay,

However, the Court is persuaded by Plaintiffs' request to provide an indicative ruling on Plaintiffs' Motion for Special Election.[53] Pursuant to Federal Rule of Civil Procedure 62.1, the Court may issue an indicative ruling on a timely motion, when, as here, the Court finds it lacks jurisdiction to order the relief requested due to the pendency of an appeal.[54] The Court may entertain the motion and deny it, or simply defer the consideration of the motion.[55]

The current legislature was elected under maps that violated § 2 of the VRA and disenfranchised the votes of thousands of Black Louisianans, thus the harm suffered was severe and continuing, warranting a special election well prior to the October 2027 elections.[56] The Court hereby notifies the parties that on remand the Court would grant the Plaintiffs' motion to order the State to hold a special election before the regular election cycle (October 2027) to timely remedy the VRA-violation.[57]

The pending appellate review does not absolve the Defendants of their obligation to comply with this Court's Order. Accordingly, if at the conclusion of the 2024 Regular Legislative Session the Louisiana Legislature has failed to enact VRA-compliant State House and Senate maps, the Court will grant Plaintiffs' Renewed Motion for Scheduling Conference to set deadlines for remedial proceedings, which shall include Plaintiffs'

---

especially so when the evidence at trial overwhelmingly showed a dilution of the Black vote in Louisiana. Accordingly, to the extent Defendants request a stay in addition to this Court finding it lacks jurisdiction, the request is denied.

[53] Rec. Doc. 271, p. 3.

[54] Fed. R. Civ. P. 62.1.

[55] Fed. R. Civ. P. 62.1 (a)(1) and (a)(2).

[56] There is no dispute that the next primary election is set for October 2027. *See* Rec. Doc. 237-1, p. 10 (Plaintiffs acknowledge next state legislative election is in 2027); *see also* Rec. Doc. 244, p. 2 (Defendants acknowledge the next legislative election is in 2027); *see also* Rec. Doc. 266, p. 19 (Legislative-Intervenors acknowledge the next state legislative election is in October 2027).

[57] *See* Fed. R. Civ. P. 62.1 (a)(3) (allowing a district court to state that it would grant the motion if the court of appeals remands the case for that purpose).

motion to order a special election as a partial remedy. The Motion for Special Election and the Renewed Motion to Set Scheduling Conference are hereby deferred. As the 2024 Regular Legislative Session is set to end on June 3, 2024,[58] the parties are directed to provide a joint status report by June 7, 2024 by 5:00 PM.

### III.    CONCLUSION

Accordingly, Plaintiffs' Motion to Set Schedule for Remedial Proceedings[59] is hereby **DENIED without prejudice**. Plaintiffs' Motion for Scheduling Conference is hereby **DENIED without prejudice**.[60] Plaintiffs' Motion for Special Election and Expedited Briefing Schedule and Renewed Motion for Scheduling Conference[61] are hereby **DEFERRED**. The parties are **ORDERED** to provide a joint status report with respect to the State Legislature's progress on creating new, compliant maps by June 7, 2024 at 5:00 PM.


**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on this  _3rd_  Day, May, 2024.


_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[58] Defendants assert that the 2024 Regular Legislative Session is set to end, at the latest, June 3, 2024, citing https://www.legis.la.gov/legis/Home.aspx. Rec. Doc. 244, p. 20.
[59] Rec. Doc. 235.
[60] Rec. Doc. 236. The Court granted Plaintiffs' Motion for Scheduling Conference (Rec. Doc. 236) when it set a scheduling conference on February 21, 2024. Rec. Doc. 238. The Court thereafter canceled this conference. The Court denies the Motion without prejudice considering its deferral of Plaintiffs' Motion for Special Election and Expedited Briefing Schedule and Renewed Motion for Scheduling Conference.
[61] Rec. Docs. 237 and 254.